UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

| | |
|---|---|
| **SHUNDA WILKINS, DIANN GRAHAM, and DAVID WATSON, on behalf of themselves and all others similarly situated,**<br><br>    **Plaintiffs,**<br><br>  **vs.**<br><br>**SIMMONS BANK,**<br><br>    **Defendant.** | **Case No. 3:20-cv-00116-DPM** |

<u>**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**</u>

  Plaintiffs Shunda Wilkins, Diann Graham, and David Watson oppose dismissal of their Amended Class Action Complaint ("Complaint") (ECF No. 15).  For the reasons explained herein, dismissal is not warranted, and Defendant's Motion to Dismiss ("Motion") (ECF No. 23) should be denied.

**I.  INTRODUCTION**

  This Court has already denied a similar motion to dismiss once, and it should do so again. In *Tannehill v. Simmons Bank*, No. 2019 WL 7176777, at *1 (E.D. Ark. Oct. 21, 2019), the plaintiff alleged that Simmons charged multiple fees on the same item and brought claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.  Simmons moved to dismiss, arguing that the contract expressly permitted the assessed fees, and that the plaintiff's suit was barred by the error resolution provision.  This Court denied Simmons' motion to dismiss.  Since the Court's ruling in *Tannehill*, at least fifteen other courts presiding over identical claims have followed this Court and denied motions to

dismiss.  Since the Court's last order, the legal landscape has grown far rockier for Simmons.  There is no basis to ask the Court to reconsider its prior ruling.[1]

The practice at issue in this litigation is the assessment of multiple $35 fees on the same (often small dollar) electronic transaction or check when reprocessed again and again after initially being returned for insufficient funds.  The practice is punitive and predatory, as it often

---

[1] Other decisions denying financial institutions' motions to dismiss include: *Morris v. Bank of Am., N.A.*, 2019 WL 1304928 (W.D.N.C. Jan. 8, 2019), *report and recommendation adopted in part*, 2019 WL 1421166 (W.D.N.C. Mar. 29, 2019) (denying motion to dismiss in challenge to multiple NSF Fees on the same item); *Tisdale v. Wilson Bank & Trust*, No. 19-400-BC (Davidson Cty. Tenn. Chancery Ct. Oct. 17, 2019) (same) (attached as **Exhibit 1)**; *Garcia v. UMB Bank, N.A.*, No. 1916-CV01874 (Jackson Cty. Mo. Cir. Ct. Oct. 18, 2019) (attached as **Exhibit 2)**; *Noe v. City Nat'l Bank of W. Va.*, No. 3:19-cv-0690 (S.D. W. Va. Feb. 19, 2020) (ECF No. 17) (same) (attached as **Exhibit 3)**; *Perri v. Notre Dame Fed. Credit Union*, No. 71C01-1909-PL-000332 (St. Joseph Cty. Ind. Cir. Ct. Mar. 2, 2020) (finding additional fees could not be assessed each time because "these are the same item or transaction and they do not morph into a separate or new item simply because the third party presents the transaction for payment a second or third time") (attached as **Exhibit 4)**; *Ingram v. Teachers Credit Union*, No. 49D01-1908-PL-O25431 (Marion Cty. Ind. Super. Ct. Feb. 18, 2020) (same) (attached as **Exhibit 5)**; *Almon v. Independence Bank*, Case No. 19-CI-00817 (McCracken Cty. Ky. Cir. Ct. Mar. 18, 2020) (finding the contract "ambiguous") (attached as **Exhibit 6)**; *McMurrin v. America First Credit Union*, No. 190909065 CN (Salt Lake Cty. Utah Dist. Ct. May 5, 2020) (same) (attached as **Exhibit 7)**; *Romohr v. The Tennessee Credit Union*, No. 19-1542-BC (Davidson Cty. Tenn. Chancery Ct. May 19, 2020) ("there is no definition of 'item' in the Account Agreement or Fee Schedule…. The Fee Schedule does not clarify this ambiguity because it just says 'Non-Sufficient Funds (NSF): $32 (all types)'") (attached as **Exhibit 8)**; *Vocaty v. Great Lakes Credit Union*, No. 19-L-727 (Lake Cty. Ill. Cir. Ct. June 3, 2020) ("As to the NSF for assessing fees each time a merchant submits a single charge to be paid, there is no language within the contract that unambiguously authorizes multiple charges. The term 'per item' is not defined and taking plaintiff's allegations to be true, a trier of fact could reasonably infer that "item" is defined by the initial charge made by [the credit union's] customer, not each time a merchant submits it to [the credit union]") (attached as **Exhibit 9)**; *Duncan v. Bancfirst*, No. CJ-2020-348 (Okla. Cty. Dist. Ct. June 3, 2020) (denying a motion to dismiss finding "[t]here may or may not be an ambiguity with regard to the phrase 'drawing an item'") (attached as **Exhibit 10)**; *Brown v. Educators Credit Union*, No. 2019CV1814 (Racine Cty. Wis. Cir. Ct. July 1, 2020) (Dkt. 51) (denying motion to dismiss multiple NSF claim) (attached as **Exhibit 11)**; *Baptiste v. GTE Fed. Credit Union d/b/a GTE Fin.*, No. 20-CA-002728 (Hillsborough Cty. Fla. Cir. Ct. July 8, 2020) (same) (attached as **Exhibit 12)**; *Teel v. HAPO Community Credit Union*, No. 19-2-03193-03 (Benton Cty. Wa. Super. Ct. Aug. 7, 2020) (same) (attached as **Exhibit 13)**; *Darty v. Scott Credit Union*, No. 19L0793 (St. Clair Cty. Ill. Cir. Ct. June 24, 2020) (same) (attached as **Exhibit 14)**; *Young v. The Wash. Trust Co.*, No. 1:10-cv-524-WES-PAS (D.R.I. June 2, 2020) (same) (attached as **Exhibit 15)**.

results in over $100 in bank fees on a single payment attempt by an accountholder already struggling to make ends meet. Because the multiple-assessment practice is so extreme, leading for-profit banks like JP Morgan Chase refuse to engage in it. Other banks that use this practice explicitly disclose it. Simmons makes no such disclosures and, instead, promises its accountholders the opposite.

Indeed, Simmons promises a single Return Item fee will be assessed per "item." Plaintiffs assert that an "item" is the same "item" when it is reprocessed a second or third time after an initial return for insufficient funds. This is because the term "item" refers to an *accountholder's* order or instruction for payment (no matter how many times that order or instruction is re-processed by a bank or merchant).[2] Contrarily, Simmons contends that each time it reprocesses an "item" for payment, this "item" transforms into a *new* "item" that can be charged a *new* Return Item fee. As discussed below, Simmons is wrong. Because Plaintiffs have pled a reasonable meaning of the contract to support their claims, the contract must be read in Plaintiffs' favor as the non-drafting party. At best for Simmons, the terms are ambiguous.

This is precisely what courts across the country have found in a recent wave of decisions challenging the identical bank fee practice that is challenged here. In addition to the many cases listed in footnote 1 – all of which Simmons fails to mention – two federal courts recently made the same finding. *Perks v. TD Bank, N.A.*, 2020 WL 1272246, at *1 (S.D.N.Y. Mar. 17, 2020) (denying a motion to dismiss because "the definition of 'item' is ambiguous with regard to whether a resubmission of an ACH transaction is a separate item or is part of the same initial

---

[2] NSF Fees, assessed when a bank *rejects* an attempted payment, are distinct from overdraft fees ("OD Fees"), assessed when a bank *authorizes and pays* a transaction even though there are insufficient funds. When a bank pays an overdraft, a bank advances funds in return for the OD Fee it assesses. When, on the other hand, a bank *rejects* an electronic or check payment for insufficient funds, it is not paid and is often reprocessed repeatedly (through no action of the customer).

ACH transaction"); *Coleman v. Alaska USA Fed. Credit Union*, 2020 WL 110742, at *1 (D. Alaska Jan. 9, 2020) (denying a motion to dismiss because it "is plausible that a member could have expected to only be charged one NSF fee when she only gave one authorization for an ACH transaction, no matter how many times the merchant presented the transaction for payment"). The *Perks* and *Coleman* orders are merely the latest in a wave of decisions denying motions to dismiss in identical cases in state and federal courts across the country.

The same result is warranted here, and the Motion should be denied in its entirety.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff Wilkins's Experience.

On December 6, 2017, Plaintiff Wilkins attempted an electronic payment to Liberty National for her insurance premium in the amount of $72.93.  Complaint, ¶ 22.  Simmons rejected payment of the item due to insufficient funds in Plaintiff's account and charged her a $35 fee for doing so.  Ms. Wilkins does not dispute the initial fee, as it is allowed by Simmons's Deposit Agreement.  *Id.* at ¶ 23.  Unbeknownst to Plaintiff, and without her request to Simmons to reprocess the item, however, twelve days later, on December 18, 2017, Simmons processed the same item yet again, and again Simmons rejected the item due to insufficient funds and charged Ms. Wilkins *another* $35 fee.  *Id.* at ¶ 24.  *In sum, Simmons assessed Plaintiff Wilkins $70 in fees in its effort to process a single payment of $72.93.  Id.* at ¶ 25.  Ms. Wilkins understood the payment to be a single item pursuant to the terms of Simmons's contract, capable at most of receiving a single Return Item Fee (if Simmons returned it) or a single Overdraft Fee (if Simmons paid it).  *Id.* at ¶ 26.

Since Ms. Wilkins's account was negative by more than $500 at the time the Return Item Fee was charged, there were insufficient funds to pay this fee.  *Id.* at ¶ 30.  **This liability,**

however, was *due immediately* pursuant to the Deposit Agreement. *Id.* Defendant closed Plaintiff Wilkins's account and notice regarding the closure was sent to Ms. Wilkins on December 22, 2017. *Id.* at ¶ 31. The account was still negative $545.21 at the time the account was closed. *See* ECF No. 9-4, p. 3. Although Plaintiff has not paid the Return Item Fee, per the Deposit Agreement, Plaintiff was and is immediately liable for that charge. In fact, per the Deposit Agreement, Ms. Wilkins "still owes Simmons the remaining balance." *Id.* at ¶ 32.

In fact, Defendant has confirmed in writing that Ms. Wilkins in fact owes the debt in a writing dated December 22, 2017 in which Defendant stated to Plaintiff: "We intend to recover the debt you owe. We have sent your account to a collection agency." *See* ECF No. 9-5 (filed under seal). And Defendant confirmed the negative balance at the time the account was closed was negative $545.21, including the Return Item Fee. *See* ECF No. 10, p. 7.

### B. Plaintiff Graham's Experience.

On August 5, 2019, Ms. Graham attempted an electronic payment to Alder Holdings, LLC in the amount of $44.19. *See* Complaint, ¶ 36. Simmons rejected payment of the item due to insufficient funds in Plaintiff's account and charged her a $35 fee for doing so on August 6, 2019. Ms. Graham does not dispute the initial fee, as it is allowed by the Deposit Agreement. *Id.* at ¶ 37. Unbeknownst to Ms. Graham, and without her request to Simmons to reprocess the item, however, three days later, on August 9, 2019, Simmons reprocessed the same item yet again, and again Simmons rejected the item due to insufficient funds and charged Plaintiff *another* $35 fee on August 12, 2019. *Id.* at ¶ 38. *In sum, Simmons assessed Ms. Graham $70 in fees in regard to a single payment of $44.19. Id.* at ¶ 39.

On August 5, 2019, Ms. Graham attempted an electronic payment to Primerica Life Insurance Company for her insurance premium in the amount of $41.17. *Id.* ¶ 40. Simmons

rejected payment of the item due to insufficient funds in Plaintiff's account and charged her a $35 fee for doing so on August 6, 2019. Ms. Graham does not dispute the initial fee, as it is allowed by the Deposit Agreement. *Id.* at ¶ 41. Without Ms. Graham's request to Simmons to reprocess the item, however, eleven days later, on August 16, 2019, Simmons processed the same item yet again, and again Simmons rejected the item due to insufficient funds and charged Plaintiff *another* $35 fee on August 19, 2019. *Id.* at ¶ 42. *In sum, Simmons assessed Ms. Graham $70 in fees in regard to a single payment of $41.17. Id.* at ¶ 43.

C.    **Plaintiff Watson's Experience.**

On or about January 5, 2016, an electronic payment in the amount of $367.05 was attempted on Mr. Watson's account. *Id.* at ¶ 47. Simmons rejected payment of the item due to insufficient funds in Plaintiff's account and charged him a $30 fee for doing so on January 5, 2016.[3] Mr. Watson does not dispute the initial fee, as it is allowed by the Deposit Agreement. *Id.* at ¶ 48. Six days later, or about January 11, 2016, Simmons, without Mr. Watson's authorization or request, attempted to reprocess the item. *Id.* at ¶ 49. Simmons again rejected the item due to insufficient funds and charged Mr. Watson *another* $30 fee on January 11, 2016. *Id.* at ¶ 50. *Thus, Simmons assessed Mr. Watson $60 in fees in regard to a single payment. Id.* at ¶ 51.

On or about January 26, 2016, an electronic payment in the amount of $108.10 was attempted on his account. *Id.* at ¶ 52. Simmons rejected payment of the item due to insufficient funds in Plaintiff's account and charged him a $30 fee on January 26, 2016 for doing so. Mr. Watson does not dispute this initial fee, as it is allowed by Simmons's Deposit Agreement. *Id.* at ¶ 53. However, six days later, on February 1, 2016, Simmons, without Mr. Watson's

---

[3] At this period in time, Simmons was charging $30 for a Return Item Fee or an Overdraft Fee.

authorization or request, attempted to reprocess the item. *Id.* at ¶ 54. Simmons again rejected

the item due to insufficient funds and charged Mr. Watson *another* $30 fee on February 1, 2016.

*Id.* at ¶ 55. *Thus, Simmons assessed Mr. Watson $60 in fees in regard to a single payment. Id.* at

¶ 56.

## III.    LEGAL STANDARD

Dismissal is proper only if a complaint fails to state a claim upon which relief can be

granted. Fed. R. Civ. P. 12(b)(6). In assessing a motion to dismiss, courts accept all factual

allegations as true and view them most favorably to the plaintiff. *Hager v. Ark. Dep't of Health*,

735 F.3d 1009, 1013 (8th Cir. 2013). As this Court stated in *Page v. Arkansas State University*:

> A motion to dismiss should not be granted merely because the complaint "does
> not state with precision all elements that give rise to a legal basis for recovery."
> *Schmedding v. Tnemec Co.*, 187 F.3d 862, 864 (8th Cir. 1999). A complaint need
> only contain "a short and plain statement of the claim showing that the pleader is
> entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)). Specific facts are not
> required; the complaint simply must "give the defendant fair notice of what the . .
> . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89,
> 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
> "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
> detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his
> 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at
> 555 (citations omitted). Stated differently, the nonmoving party must "raise a
> right to relief above a speculative level." *Schaaf*, 517 F.3d at 549.

2014 WL 584792, at *2 (E.D. Ark. Feb. 14, 2014).

## IV.    ARGUMENT

### A.    Plaintiffs Adequately Allege that the Assessment of Multiple Return Item
###         Fees on the Same Item Is a Breach of the Account Documents.

A contract must be interpreted "to give the parties' words the meaning that they intended

them to have." *Prochazka v. Bee-Three Dev., LLC*, 466 S.W.3d 448, 452 (Ark. Ct. App. 2015).

"A contractual provision is ambiguous when…there is doubt or uncertainty as to its meaning so

that it is open to at least two reasonable interpretations." *Id*. Because the contract here is at best

ambiguous, and because meaning of an ambiguous contract term is a question of fact, which at this stage must be answered in Plaintiffs' favor, Plaintiffs state a claim for breach of contract, and Defendant's motion must be denied.

### 1. Simmons Should Not Assess More Than One NSF Fee on the Same "Item" or "Transaction."

Simmons' Fee Schedule promises a single Return Item Fee may be assessed per "item":

**A fee may be imposed if you overdraw your account**. When you write a check, withdraw money in person or from an ATM, use your debit card to make a purchase, or make an automatic bill payment or other electronic payment for more than the amount in your account; you overdraw your account. Simmons Bank has the choice to either pay the item or not. If we pay even though you don't have the money in your account; you may be charged a Paid Item Fee (Overdraft Fee). **If we return your item without paying it you may be charged a Return Item Fee (Insufficient Funds (NSF) Fee.**

[…]

Paid Item/Overdraft Fee **Per Item**
Non-Customer: Not offered
Customer: $35.00

Return Item/Insufficient Funds (NSF) Fee **Per Item**
Non-Customer: Not offered
Customer: $35.00

Complaint, ¶ 61 (emphasis added).

These disclosures make myriad promises that bar the assessment of multiple Return Item Fees on the same "item." The first provision makes two separate promises that "a fee" (singular) may be imposed. And the promise is that "a fee" (singular) may be imposed if and only if a particular action occurs: "when you . . . make an . . . electronic payment." In other words, fee assessment is tied directly to the action of an accountholder – the "making" of an electronic payment – by you. "A fee" (singular) may be assessed when "you write . . . withdraw . . . use . . . or make" a payment. Plaintiffs "made" only one payment attempt each, even if behind the scenes, Simmons and the merchants were processing that same payment over and over again.

A plain, common sense reading of these contract provisions bar Simmons's multiple-fee practice, since it promises a single fee per "item," not a fee *each time* that item is processed or presented.  Here, there is simply no contractual authorization for assessing a Return Item Fee each time the *same* "item" is returned, contrary to Simmons's argument.  Because Plaintiffs authorized only a single payment, the contract permits Simmons to charge, at most, a single fee on that payment.  When Simmons instead charges multiple fees based on that single payment (when it, in fact, charged a fee *each time* the same item was processed), Simmons breaches the contract. An "item" is still the same "item" even if reprocessed multiple times.

"Item" has a well-understood industry meaning, in which "item" refers to an *accountholder's* instruction for payment, not a merchant's attempt to collect on that payment. This industry definition comports with the Arkansas Unified Commercial Code ("UCC"), which defines item in the same way.  *See* Ark. Code Ann. § 4-4-104 (2020) ("'Item' means an instrument or a promise or order to pay money[.]")

Contrary to Simmons's argument, this industry usage comports with the National Automated Clearinghouse Association ("NACHA") rules that are incorporated by reference into the contract.  As discussed further below, under the rules' terminology, a merchant's request for payment via the ACH network, pursuant to an instruction for payment by the consumer, is called an "Entry," which "*shall be deemed an 'item'* within the meaning of" the UCC.[4]  NACHA's rules specifically *prohibit* a merchant from altering a re-presented entry in an attempt to make it look like a customer has authorized a *new* payment request.[5]  Thus, contrary to Simmons's argument, the rules make clear that a "re-presented" entry is just another request for payment of

---

[4] NACHA Operating Rules & Guidelines § 8.33 (emphasis added).
[5] *ACH Operations Bulletin #1-2014: Questionable ACH Debit Origination: Roles and Responsibilities of ODFIs and RDFIs*, *NACHA* (2014), https://perma.cc/A4PF-PWMR (Aug. 13, 2020).

the original entry, not a separate entry (or "item") that could trigger an additional Return Item Fee.  There is no doubt that the NACHA rules support Plaintiffs' claims.  In *Tannehill*, this Court denied Simmons' motion to dismiss, explaining that the parties' arguments, which concern both the contract's meaning and "the rather complicated ACH rules," meant "the Court [was] unable….to hold unequivocally at the threshold that [Plaintiff's] breach claim fails as a matter of law." *2019 WL 7176777 at *1.*  At the very least, that is still true.

Accordingly, Simmons's disclosures reasonably mean a single Return Item Fee or Overdraft Fee may be charged for each "item."  These provisions, along with the common sense, industry usage, and contractual context, must mean an "item" cannot become a new "item" when Simmons returns and reprocesses it one or more times.

### 2.   Directly Applicable Case Law Supports Denial of the Motion.

As introduced above, courts throughout the country have recently denied motions to dismiss like Simmons's Motion.  Plaintiffs' basic premise – that it is at best ambiguous whether an "item" or "transaction" becomes a new "item" or "transaction" when re-presented two or three times – has repeatedly been upheld in numerous cases Simmons ignores.  The same result should apply here.

For example, the court in *Perks* determined:

> the definition of 'item' is ambiguous with regard to whether a resubmission of an ACH transaction is a separate item or is part of the same initial ACH transaction, and that ambiguity must be read in favor of Plaintiffs at this stage. Because Plaintiffs' proposed construction is **a reasonable construction of the Agreement**, **Plaintiffs have sufficiently alleged a breach resulting from multiple overdraft charges** imposed as a result of resubmissions of a single ACH transaction.

2020 WL 1272246, at *3 (emphasis added).

10

Similarly, in *Perri*, the court denied a motion to dismiss in a case involving an essentially identical claim.  The court reasoned:

> The Court agrees with Plaintiff that ultimately ***these are the same item or transaction*** **and they do not morph into a separate or new item simply because the third party presents the transaction for payment a second or third time.** It is incumbent on Defendant to identify language in its contract with Plaintiff that unambiguously provides that a separate or additional NSF or overdraft fee could be imposed on the same transaction. The Agreement before the Court in this case does not do so.

**Exhibit 4** at 6 (emphasis added).

The same result was reached in *Almon*, *supra* where with respect to the meaning of the term "item," the court held that "[b]oth [parties'] interpretations are reasonable; therefore, the Court finds that the contract is ambiguous." **Exhibit 6** at 3.

Most recently, in *Romohr v. The Tennessee Credit Union*, the court considered the same multiple NSF practice Plaintiffs challenge here.  After reviewing the operative contract documents, the court found that, like here,

> there is no definition of 'item' in the Account Agreement or Fee Schedule, and that does lend some ambiguity to the analysis of whether or not an authorized ACH is one item, or is an item each time it is submitted. The Fee Schedule does not clarify this ambiguity because it just says "Non-Sufficient Funds (NSF): $32 (all types)."

**Exhibit 8** at 5-6.  The court, therefore, held that "[g]iven the standard applicable to . . . motions to dismiss, and the subject agreement, with its associated ambiguity, the Court denies Tennessee Credit Union's motion to dismiss [plaintiff's] breach of contract claim." *Id*. at 6.

Similarly, the well-reasoned, 18-page order in *Coleman* denied the motion to dismiss with respect to plaintiff's breach of contract and breach of the implied covenant of good faith and fair dealing claims because "[i]t is plausible that a member could have expected to only be

charged one NSF fee when she only gave one authorization for an ACH transaction, no matter how many times the merchant presented the transaction for payment."  2020 WL 110742, at *9.

Even more recently, in *Baptiste v. GTE*, the plaintiff asserted that GTE's practice of assessing a non-sufficient funds fee each time GTE returned a check or ACH payment request for non-sufficient funds breached GTE's account agreement.  GTE moved to dismiss, arguing that the account agreement's promise to assess a fee "per occurrence…or per item" unambiguously authorized GTE to assess a fee each time it returned an item due to insufficient funds.  **Exhibit 12** at 6.  The court noted that "*item* is a term subject to multiple constructions" and nothing in the fee schedule "address[ed] the present situation, which can occur and does occur, apparently at the sole discretion of GTE and the payee, not the account owner."  *Id.* at 5 (emphasis in original).  The court thus found ambiguity regarding the assessment of fees in such circumstances and determined that the plaintiff's understanding of "item" to mean an accountholder instruction for payment was reasonable. *Id.* at 5-6.

The court also considered the contracts of other financial institutions that plainly and unambiguously disclosed the multiple fee practice.  The court stated such clear disclosures provided an "apt juxtaposition" to GTE's contract as they indicated that "the precise practice challenged here . . . is commonly expressly disclosed in banking" and "there is a broad usage through banking where 'item' means what Plaintiff plausibly pleads it mean[s] in the absence of contractual language defining that key term otherwise."  *Id.* at 7 n.1.  Accordingly, the court held, "at best, the Fee Schedule is ambiguous" because "the contract language and aforementioned [NACHA] rules and industry standards all could reasonably mean that an 'item' does not become a new 'item' when it is reprocessed."  *Id.* at 7.  The court thus denied the

motion to dismiss the plaintiff's claim for breach of contract, including the implied covenant of good faith and fair dealing. *Id.* at 5-8.

In another recent decision, *Darty v. Scott Credit Union*, the court denied a motion to dismiss an identical claim for breach of contract, including the implied covenant of good faith and fair dealing, where the account agreement "plainly promise[d] to only assess 'a charge for each item' and the Fee Schedule plainly promise[d] to only assess a fee 'Per Item.'" **Exhibit 14** at 12. Applying this language, the court denied the motion to dismiss the breach of contract claim "[b]ecause the 2018 Agreement . . . is silent regarding the assessment of fees when a merchant resubmits an item[] and fails to define 'per item'" and, therefore, "nothing in the 2018 Agreement . . . unambiguously authorize[d] multiple charges on the same item returned for insufficient funds." *Id.* at 13, 15.

Similarly, in *Brown v. Educators Credit Union*, the court denied a motion to dismiss claims that the defendant credit union's practice of assessing multiple fees on a single item breached the parties' contract, including the implied covenant of good faith. **Exhibit 11** at 2. The credit union asserted that its contract unambiguously allowed for the imposition of multiple fees; however, the court rejected the credit union's argument, noting the plaintiff challenged the credit union's interpretation as "contrary to industry standards" and "ambigu[ous] when read with other provisions of the contract." *Id.* at 2. Thus, the court found that "reasonable individuals may disagree with the actual meaning of the membership agreement regarding assessment of NSF charges and accordingly the motion to dismiss the breach of contract claim must be denied." *Id.*

There is nothing that distinguishes Simmons's contractual promises from the ones made by other defendant banks in the cases above. As this robust body of case law shows, the same

check, automatic bill payment, or other electronic payment on an account is not reasonably understood to be a new "item" each time it is rejected for payment then reprocessed, especially when – as here – Plaintiffs took no action to resubmit the item.  The account documents here do not provide contract language that the same item is eligible to incur multiple fees.  At best, the contract language at issue is ambiguous on this point.  Because the meaning of an ambiguous contract term is a fact question, Plaintiffs have stated a breach of contract claim and the motion must be denied.

### 3. Banks and Credit Unions Large and Small Use the Term "Item" in the Common Sense, Plain Way that Plaintiffs Urge.

Simmons's multiple fee practice is not universal.  For example, Chase charges a maximum of one NSF Fee per item.  Complaint, ¶ 19.  First Financial Bank engages in the same abusive multiple fee practice as Simmons, however (unlike Simmons) it expressly provides in its deposit agreement that "[m]erchants or payees may present an item multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other reason (representment).  Each presentment is considered an item and will be charged accordingly."  This disclosure and many other examples are provided in the Amended Complaint.  *Id.* at ¶¶ 73-78.  These disclosures are important because (a) they indicate that the precise practice challenged here – assessment of multiple fees on the same item – is commonly expressly disclosed in the banking industry, and (b) they show there is a broad usage throughout banking where "item" means what Plaintiffs say it means, i.e., that an "item" does not become a new "item" when it is reprocessed.  Simmons, not Plaintiffs, offers an unusual, unanticipated definition of the common term "item," one the Court should construe is unreasonable for the contract.

The Amended Complaint alleges the existence of an industry practice that directly contradicts Simmons's interpretation of the contract.  This industry definition comports with the

Arkansas UCC, which defines item in the same way. *See supra* ("'Item' means an instrument or a promise or order to pay money"). Again, Plaintiffs only made one "promise or order to pay money" – they only wanted to pay a given bill once, not many times.

### 4. NACHA Itself Uses a Similar Term ("Entry") in the Same Way and Bars Authorizations or Orders from Anyone Except Accountholders.

Plaintiffs' ACH payment took place over Automated Clearing House (ACH) system which, as Simmons correctly points out, is governed by the NACHA Rules. NACHA is "a transaction processing system that facilitates electronic transfer of funds between financial institutions, usually on behalf of account holders." *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 328, 330 (4th Cir. 2017). Contrary to Simmons's argument, however, the NACHA Rules support Plaintiffs' contract interpretation of the meaning of the terms "item" and "transaction."

To *initiate* an ACH payment from a consumer's account, a merchant must first obtain the consumer's account information and authorization to transfer funds. *See* 15 U.S.C. § 1693e. The Electronic Funds Transfers Act requires that the consumer's authorization be "in writing." *Id.* Once authorization is obtained, the merchant's financial institution can submit a request for payment to the ACH network, which is forwarded by the network to the consumer's bank or credit union. *See History of NACHA and the ACH Network*, NACHA (Aug. 13, 2020).[6] If all goes smoothly, the consumer's bank or credit union will then debit the consumer's account for the amount of the payment. *See id.*

The NACHA Rules allow a financial institution to "return" an ACH payment request for "any reason." NACHA, Operating Rules & Guidelines § 3.8 (2013). Under NACHA's terminology, a request for payment via the ACH network is called an "*Entry.*" A financial institution's return of an "Entry" without payment is called a "*Return Entry.*" *See id.* §§ 8.33,

---

[6] Available at https://perma.cc/YJW5-Q6NY (last visited August 18, 2020).

8.79 (emphasis added).  When an entry is returned for insufficient funds, NACHA's rules allow a merchant to make additional attempts to obtain payment by "re-presenting" (or "reinitiating") the returned entry.  *See id.* § 2.12.4.2.  To ensure that the receiving financial institution recognizes the merchant's payment request is a "re-presented" entry rather than a new one, the request must "contain the identical data as the original" and include the label "RETRY PYMT." *See id.*  The rules prohibit a merchant from altering a previously returned entry to look like a new entry.  *Id.*

In addition to any fee that the customer's bank or credit union may charge for a returned entry, the merchant whose payment request was returned may also impose its own fee.  NACHA's rules, however, permit the merchant to charge only *one* such fee for a single "returned entry," *even if the merchant re-presents that entry multiple times*.  *See* NACHA Operating Rules & Guideline § 2.14.4 (emphasis added).  Thus, the rules thus make clear that a "re-presented" entry is just another request for payment of the original entry, not a separate entry (or "item") that could trigger an additional fee.

NACHA Rules also make clear that an "Entry" is the same "Entry" when reprocessed *unless* the merchant receives a *new authorization from the consumer* for the payment amount:

a debit Entry will not be treated as a reinitiated Entry if:

- the debit Entry is one in a series of preauthorized, recurring debit Entries and is not contingent upon whether an earlier debit Entry in the recurring series has been Returned; or,
- the Originator obtains a new authorization for the debit Entry after it receives the original Return Entry.

*Id*.

The NACHA Rules, in other words, make clear that such authorizations can only come from accountholders, not from merchants, and indeed it is fraudulent for merchants to code transactions otherwise.  This directly rebuts Simmons's argument that the merchant can initiate a

16

new, separate "item" or "transaction" merely by reprocessing an old one.  Read in conjunction with the NACHA Rules, Simmons's contract does not authorize more than one fee on the same item.  Indeed, this Court in *Tannehill* denied a motion to dismiss on this basis.  *See supra*.[7]

### 5.  Simmons's Arguments Fail.

Ignoring the overwhelming authority rejecting materially identical arguments, Simmons again argues that its contract allows it to impose an unlimited number of fees on the same item or transaction.  Simmons is still wrong.

The Bank's main argument is based on misconstruing the allegations in Plaintiffs' Complaint.  Simmons argues that "Plaintiffs' theory that multiple withdrawal requests submitted days or weeks apart constitute a single 'Item' is based on a fiction that merchants submitted single withdrawal requests through the ACH Network that Simmons purportedly chose to process multiple times."  ECF No. 23, p. 8.  But there is no "fiction" here.  As discussed above, merchants and Simmons may reprocess the same item under the NACHA rules.  Plaintiffs never allege otherwise.  What is at issue, simply, is what Simmons' contract documents provide about fee assessment – something which is not governed by NACHA Rules, but governed by Simmons' own contract documents.  Those contract documents do not say Simmons will charge a new fee (whether Return Item or Overdraft) each time it reprocesses an item.  Furthermore, it plainly states the bank will only charge a fee "per item."  That is the basis for Plaintiffs' claims.

Simmons also argues that "[e]ach time a merchant re-submitted a previously-rejected withdrawal request through the ACH Network, anywhere from three to twelve days following the original return, the merchant made a 'withdrawal request[.]'"  ECF No. 23, p. 7.  First, that is

---

[7] Contrary to Simmons's argument, Plaintiffs do not argue that it is improper for a merchant to re-submit the same transaction for payment multiple times or that it is improper for Simmons to re-process the same transaction.  Instead, Plaintiffs contend that Simmons's contract prohibits it from assessing two or three fees on repeated resubmissions of the same transaction or "item".

false.  A merchant, under the NACHA Rules and common sense, cannot make a "withdrawal request" on its own.  That is called fraud.  All a merchant can do is process a withdrawal request made by an accountholder.  Second, the contract provision relied upon by Simmons is irrelevant anyway because it makes no reference whatsoever to Return Item Fee assessment or to multiple fees on the same item.  The provision relied upon by Simmons says merely:

> Overdrafts - You understand that we may, at our discretion, honor withdrawal requests that overdraw your account. However, the fact that we may honor withdrawal requests that overdraw the account balance does not obligate us to do so later. So you can NOT rely on us to pay overdrafts on your account regardless of how frequently or under what circumstances we have paid overdrafts on your account in the past. We can change our practice of paying overdrafts on your account without notice to you. You can ask us if we have other account services that might be available to you where we commit to paying overdrafts under certain circumstances, such as an overdraft protection line-of-credit or a plan to sweep funds from another account you have with us. You agree that we may charge fees for overdrafts. For consumer accounts, we will not charge fees for overdrafts caused by ATM withdrawals or one-time debit card transactions if you have not opted-in to that service. We may use subsequent deposits, including direct deposits of social security or other government benefits, to cover such overdrafts and overdraft fees.

Ex. 2 to ECF No. 23.  It provides no language about when and in what number fees are assessed and has no bearing on the *instant* dispute.  Instead, for guidance on authorized fee assessment in Simmons's contract, one must look to the Fee Schedule, which makes the plain, express "per item" promise discussed above.[8]

---

[8] Simmons's arguments about the meaning of the NACHA Rules are nonsensical and self-contradictory.  On the one hand, it argues that the NACHA Rules make clear "that the sequence of rejecting payment and returning an entry for insufficient funds '***can take place only once; there is no further recourse available to the parties within the ACH Network***.'" (emphasis added by Simmons).  But then it immediately recognizes that "the NACHA rules allow a merchant (and its bank) to '[r]einitiate an entry' through the ACH Network 'a maximum of two times following the return of the original entry.'"  Both cannot be true.  Contrary to Simmons' argument that processing of an item "can only take place once," there is an entire process for reinitiations of "entries," so obviously processing of an item can take place more than once.  The provision highlighted and bolded by Simmons merely states that each time an entry is returned, the participants in the system can only take the steps listed, in the order they are listed (they

Simmons relies heavily on *Lambert v. Navy Federal Credit Union*, 2019 WL 3843064 (E.D. Va. Aug. 14, 2019).  However, in that case, the trial court determined each reprocessing attempt was a new "debit" or debit attempt, and each "debit" was eligible for a new NSF Fee, by relying on contract language Simmons does not use.  By contrast, here there is no definition of "item" and the definition of "debit" is not at issue.  Indeed, the court in *Perks* distinguished *Lambert v. Navy Federal* on the just that basis that the contract provisions in that case were substantively different:

> In *Lambert v. Navy Federal Credit Union*, 2019 WL 3843064 (E.D. Va. Aug. 14, 2019) the contract authorizing NSF fees stated that "[a] fee may be assessed . . . for each returned debit item." *Id*. at *3 (ellipses in original). It then defined "items" to include "all . . . Automated Clearing House (ACH) debits," and the parties agreed that "an 'item' is a request or invitation for payment." Id. Thus it was clear that the contract at issue in that case authorized NSF fees on each returned ACH debit request, regardless of its status as a submission or resubmission. *Id*. at *3–4. By contrast, the Agreement does not define "item" as broadly as a request for payment. Nor does it authorize fees on all ACH debits; but rather on "[an] ACH transaction," which could encompass all resubmissions associated with a single transaction.

2020 WL 1272246, at *3 (internal citations omitted).  For the reasons that the *Perks* court distinguished *Lambert*, it is also irrelevant here.  *Lambert* also predates the numerous other decisions cited herein, all of which rejected *Lambert's* analysis.  *Lambert* is, to put it mildly, against the great weight of authority.[9]

### B.    Ms. Wilkins and Mr. Watson Have Valid Contract Claims.

In an attempt to show that Ms. Wilkins and Mr. Watson do not have a breach of contract claim, the Bank contends that under Arkansas law, Ms. Wilkins and Mr. Watson must show they

---

cannot, for example, have an offline conversation about whether a given payment was properly coded, or processed, or authorized) – and participants cannot again take those discrete steps until the same entry is "reinitiated" per the NACHA Rules.

[9] It should be noted that despite the dismissal of plaintiff's claims in *Lambert* at the trial court level, and while the matter was on appeal in the Fourth Circuit, the parties in *Lambert* recently agreed to a *class-wide* settlement that will provide significant benefits to the class.

"did what the contract required." *See* ECF No. 23, p. 10. There are numerous problems with this argument. First, Arkansas law does not impose such a requirement as the Bank suggests. The three cases that Simmons cites for this requirement – *Ramthun v. Bryan Career College, Inc.*, 93 F. Supp. 3d 1011, 1023 (W.D. Ark. 2015), *Commercial Credit Grp. Inc. v. Allianz Global Corp. & Specialty N. Am.*, 2018 WL 1575823, at *5 (E.D. Ark. Mar. 30, 2018), and *Moore v. Mack's Sport Shop, LLLP*, 2017 WL 4350980, at *11 (E.D. Ark. Sept. 29, 2017) – all cite the same Arkansas Supreme Court case, *Foreman School District No. 25 v. Steele*, 61 S.W.3d 801 (Ark. 2001), in support of this premise. *Foreman*, however, did not hold that a plaintiff must show that he or she "did what the contract required" in order to state a valid claim for breach of contract, but rather held "[a] person may be liable for breach of contract if the complaining party can prove **the existence of an agreement, breach of the agreement, and resulting damages**." *Id.* at 807 (citing *Ultracuts Ltd. v. Wal-Mart Stores, Inc.*, 33 S.W.3d 128, 133 (Ark. 2000) (same) (emphasis added). Defendant's attempt to create new criteria for a breach of contract claim beyond those stated by the Arkansas Supreme Court should be rejected.

Second, Simmons's attempt to suggest its breach is somehow excused by a subsequent breach by Ms. Wilkins and Mr. Graham is inconsistent with Arkansas law.[10] Arkansas law recognizes that "[w]here one party breaches a contract and defends that the other party did so first, defendant's obligation to perform may be discharged if plaintiff's breach is material and sufficiently serious." *Mobil Expl. & Producing N. Am., Inc. v. Graham Royalty Ltd.*, 910 F.2d 504, 507 (8th Cir. 1990) (citing *TXO Production Corp. v. Page Farms, Inc.*, 698 S.W.2d 791, 793 (Ark. 1985)). Unfortunately for Simmons, it was the party that breached the contract first by assessing multiple fees on the same item. The alleged subsequent failure of Ms. Wilkins or Mr.

---

[10] The Bank does not assert this argument as to Plaintiff Graham. Therefore, even if the Court were to accept this argument, it would not result in the dismissal of Ms. Graham's claims.

Graham to immediately repay their account shortages does not undo the Bank's prior breach. *See, e.g.*, *Bank of Am., N.A. v. JB Hanna, LLC*, 766 F.3d 841, 854 (8th Cir. 2014) (finding bank's breach irrelevant because it did not occur prior to the default by defendant). The Bank's attempt to excuse its breach by relying on subsequent behavior by Plaintiffs is unpersuasive.[11]

Finally, courts have universally found that the liability to repay a defendant is sufficient to state a valid claim, even if the plaintiff never paid the fee or amount owed in question. *See, e.g.*, *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1119 (9th Cir. 2017); *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 51 (2d Cir. 2016); *Hamilton v. SunTrust Mortg. Inc.*, 6 F. Supp. 3d 1300, 1307 (S.D. Fla. 2014); *McCracken v. Verisma Sys.*, 131 F. Supp. 3d 38, 42 (W.D.N.Y. 2015). As Simmons contends throughout its brief, Ms. Wilkins and Mr. Watson have "an obligation to repay" the amounts they have overdrawn their accounts. *See* ECF No. 23, pp. 3, 11. Further, Simmons has made it clear it intends to countersue Plaintiffs Wilkins and Watson for these outstanding amounts. *Id.* at 2, n.1. This obligation to pay, which the Bank has openly embraced, allows Ms. Wilkins and Mr. Watson to pursue this claim.

*McCracken v. Verisma Systems* is likewise instructive. There, the plaintiffs, all of whom were patients who received medical treatment at the healthcare facility, claimed that Defendants charged them excessively for copies of their medical records, in violation of the relevant New York statutes. 131 F. Supp. 3d at 41. Defendants challenged the plaintiffs' ability to bring the claim on the grounds that they never actually paid the copying expenses that they claimed were

---

[11] Moreover, Defendant's allegations about Plaintiffs' breach are based on documents beyond the four corners of the Amended Complaint. Therefore, they are inadmissible at this stage. *E.g.*, *Elder v. Gillespie*, 2020 WL 2813524, at *4 (E.D. Ark. May 29, 2020) ("When considering a motion to dismiss, a court may consider materials that are part of the public record, do not contradict the complaint, or are necessarily embraced by the pleadings") (citing *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687-88 (8th Cir. 2003); *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008).

excessive. *Id.* The district court rejected this argument, finding that "Plaintiffs ha[d] pleaded facts, and attached documentary evidence indicating that, at the time the Firm incurred the copying expenses, Plaintiffs were legally obligated to reimburse the Firm for expenses incurred in connection with representing them." *Id.* at 42. The court further held that the "liability to repay the Firm for the copying expenses has given Plaintiffs standing to challenge the copying charges as excessive" under the statutes in question. *Id.* *See also Carter*, 822 F.3d at 51 (holding that because plaintiffs bore the ultimate expense for paying for the records, they had standing to challenge amount of fee being charged).

*Hamilton* is also informative. There, the defendants claimed that Hamilton was not a proper plaintiff because she never paid for any of the force-placed insurance at issue in the case because "it was not placed until 2010 – two years after she stopped paying her mortgage." 6 F. Supp. 3d at 1307. In response, the plaintiffs argued they could pursue the claim because "under the terms of her mortgage contract, the force-placed insurance premiums are automatically added to her total debt." *Id.* In finding that Hamilton had standing, the district court concluded, "it is undisputed that Hamilton's account has already been charged for the force-placed insurance premiums. If Hamilton is successful in this action, her total debt may be reduced." *Id.* *See also Williams v. Wells Fargo Bank*, 280 F.R.D. 665, 673 (S.D. Fla. 2012) (certifying class of borrowers in force-placed insurance case to include those whom had been charged and either paid or still owed bank for premiums); *In re Chase Bank USA, N.A. "Check Loan" Contract Litig.*, 274 F.R.D. 286, 292-93 (N.D. Cal. 2011) (rejecting argument that putative class representatives who owed money to bank were inadequate); *Lane v. Wells Fargo Bank, N.A.*, 2013 WL 3187410, at *11 (N.D. Cal. June 21, 2013) (finding borrowers had standing to bring force-placed insurance claims even though they had not yet paid any portion of premiums).

22

Here, Ms. Wilkins and Mr. Watson have "an obligation to repay" the amounts they have overdrawn their accounts. Accordingly, Plaintiffs Wilkins and Watson can pursue their claims. Any subsequent breach of the parties' contract by Plaintiffs would not change this analysis.

### E. Plaintiffs Have Properly Pled Claims for Unjust Enrichment

Plaintiffs have also stated a valid claim for unjust enrichment. Unjust enrichment is an equitable doctrine. *Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 210 S.W.3d 101, 112 (Ark. 2005). "It is the principle that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly." *Id.; see Brown v. Brown*, 152 S.W.3d 911, 916 (Mo. Ct. App. 2005) (describing unjust enrichment under Missouri law).

Rule 8 permits a plaintiff to plead alternative claims, regardless of consistency. Fed. R. Civ. P. 8(d). Simmons contends that Plaintiffs cannot succeed on their contract claim. If Plaintiffs' contract claim fails, Plaintiffs may be entitled to recover under a theory of unjust enrichment. Simmons has not established that it had a contractual or legal right to assess (a) more than one Return Item Fee on the same item; and (b) *both* Return Item Fees and OD Fees on the same item. Accordingly, Plaintiffs have sufficiently alleged a claim for unjust enrichment as an alternative claim for relief. *E.g.*, *Hughes v. TD Bank, N.A.*, 856 F. Supp. 2d 673, 682 (D.N.J. 2012).

"The mere existence of a contract between the parties does not automatically foreclose a claim of unjust enrichment." *Deutsche Bank Nat'l Trust Co. v. Austin*, 385 S.W.3d 381, 387 (Ark. App. 2011) (citing *Campbell v. Asbury Auto. Inc.*, 381 S.W.3d 21 (Ark. 2011)). A court

may "impose the remedy of unjust enrichment to further the ends of justice when the express contract does not exist, is void, does not provide an answer, or fully address a subject." *Id.  See also Access Mediquip, LLC v. St. Vincent Infirmary Med. Ctr.*, 2012 WL 4359055, at *6 (E.D. Ark. 2012) (finding existence of contract does not foreclose unjust enrichment claim where contract does not fully address the issue at hand and allowing pleading of unjust enrichment as alternative to breach of contract claim).

In *Campbell*, the Arkansas Supreme Court reversed a lower court's grant of summary judgment on the issue of unjust enrichment and stated "[t]his court has, in fact, observed that '[t]here can be no 'unjust enrichment' in contract cases.' However, there are exceptions to that rule."  381 S.W.3d at 22 (internal citations omitted).  *Campbell* recognized the exceptions of rescission at law, discharge by impossibility, frustration of purpose, and fundamental mistake by the parties.  *Id*.  Relying on authority from the Eighth Circuit, the court held:

> 'We must remember that the rules of common law, especially rules which concern forms of pleading, should never be taken beyond the reason which gave them birth. The reason for the rule that someone with an express contract is not allowed to proceed on an unjust enrichment theory, is that such a person has no need of such a proceeding, and, moreover, that such a person should not be allowed by means of such a proceeding to recover anything more or different from what the contract provides for. Here, that reason does not apply. . . . When the reason for the rule ceases, the rule itself ceases to apply. No injustice whatsoever is done to [the Defendant] by this result. Indeed, it would be a gross injustice to [the Plaintiff] to apply woodenly the technical rule on which [the Defendant] relies on this appeal.'

*Id.* at 23 (quoting *U.S. v. Applied Pharm. Consultants, Inc.*, 182 F.3d 603, 609 (8th Cir. 1999)).

As in *Applied Pharmacy* and *Campbell*, Plaintiffs here are not seeking to "recover anything more or different from what the contract provides for" through his claim for unjust enrichment.  *Id*.  Consequently, the general rule that an express contract operates to bar a claim for unjust enrichment does not apply.

The Bank's claim that no injustice has been imposed on either Ms. Wilkins or Mr. Watson is unpersuasive. The Bank's assessment of fees at the time when it was not entitled to such fees was both impermissible and unjust. That Plaintiffs Wilkins and Watson may have subsequently done something the Bank claims is unjust does not undo or negate the Bank's prior behavior. Each Plaintiff has sufficiently alleged that Simmons was unjustly enriched.

## V. CONCLUSION

Plaintiffs' claims are validly pled and Defendant's Motion should be DENIED. Should the Court determine that any of the claims are subject to dismissal, Plaintiffs respectfully request leave to replead pursuant to Rule 15.

Dated: August 24, 2020.                Respectfully submitted,


E. Adam Webb                               William F. Burns (2008019)
WEBB, KLASE & LEMOND, LLC                  WATSON BURNS, PLLC
1900 The Exchange, S.E., Suite 480         253 Adams Avenue
Atlanta, Georgia 30339                     Memphis, Tennessee 38103
(770) 444-0773                             (901) 529-7996
Adam@WebbLLC.com                           bburns@watsonburns.com

Jeffrey Kaliel                             Tiffany M. Yiatras
KALIEL PLLC                                Francis J. "Casey" Flynn, Jr.
1875 Connecticut Avenue NW                 CONSUMER PROTECTION LEGAL, LLC
10th Floor                                 308 Hutchinson Road
Washington, DC 20009                       Ellisville, Missouri 63011
(202) 350-4783                             tiffany@consumerprotectionlegal.com
jkaliel@kalielpllc.com                     casey@consumerprotectionlegal.com

Lynn A. Toops                              J. Gerard Stranch, IV*
COHEN & MALAD, LLP                         BRANSTETTER, STRANCH
One Indiana Square, Suite 1400             & JENNINGS, PLLC
Indianapolis, Indiana 46204                223 Rosa L. Parks Avenue, Suite 200
(317) 636-6481                             Nashville, Tennessee 37203
ltoops@cohenandmalad.com                   (615) 254-8801
                                           gerards@bsjfirm.com


*Attorneys for Plaintiffs*

25

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to all counsel of record.

E. Adam Webb